IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MARCUS INGRAM, Individually, | ) | Civil Action No.: 4:15-CV-03397-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CONWAY FOODS INC., a South | ) | |
| Carolina Corporation d/b/a MARYLAND | ) | |
| FRIED CHICKEN, and GATOR | ) | |
| COASTAL SHOPPING CENTRE, LLC, | ) | |
| a Delaware Limited Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Currently pending before the court is Defendant Conway Foods Inc.'s motion to dismiss plaintiff's first supplemental complaint [ECF #45] and Defendant Gator Coastal Shopping Centre, LLC's motion to dismiss plaintiff's first supplemental complaint [ECF #46]. Both parties have had the opportunity to extensively brief the issues raised in the motion to dismiss, and this Court has thoroughly considered all pleadings filed in this case.[1] Defendant Gator Coastal Shopping Centre, LLC adopted and joined the arguments asserted by Defendant Conway Foods, Inc. in its motion to dismiss. [ECF #46]. Accordingly, this Court will analyze both motions simultaneously in this Order.

**Factual Background and Procedural History**

On August 25, 2015, Plaintiff Marcus Ingram filed this civil action against Defendants

---

[1] Under Local Civil Rule 7.09 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

Conway Foods, Inc. ("Conway Foods") and Gator Coastal Shopping Centre LLC ("Gator Coastal") alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. (the "ADA"). [ECF #1]. After Defendant Conway Foods filed a motion to dismiss for lack of jurisdiction on September 29, 2015 [ECF #11], Plaintiff amended his complaint on October 14, 2015. [ECF #15]. On October 28, 2015, Defendant Conway Foods filed a subsequent motion to dismiss for lack of jurisdiction. [ECF #19]. Defendant Gator Coastal filed a motion to dismiss on February 15, 2016. [ECF #38]. Plaintiff again amended his complaint on March 22, 2016. [ECF #43]. The prior motions to dismiss were either terminated or denied as moot. On April 4, 2016, Defendant Conway Foods filed its motion to dismiss plaintiff's complaint, which is currently before this Court. [ECF #45]. On April 8, 2016, Defendant Gator Coastal filed its motion to dismiss plaintiff's complaint, which is also currently pending before this Court. [ECF #46].

     Plaintiff Marcus Ingram is a Georgia resident who is paralyzed as a result of a spinal cord injury and relies on a wheelchair to ambulate. [ECF #43, p. 2]. Plaintiff visits the Myrtle Beach, South Carolina area and surrounding areas approximately once every quarter with family and friends. [ECF #43, p. 2]. Plaintiff alleges he has been visiting this area for ten to fifteen years. [ECF #43, p. 2]. Plaintiff lives approximately three hundred fifty (350) miles from the Defendants' subject location. [ECF #46, Ex. C]. Plaintiff alleges Gator Coastal owns the subject shopping center where the Maryland Fried Chicken is located. [ECF #43, pp. 1-2]. While visiting the area, Plaintiff alleges he frequently shops at the subject shopping center and that he has been to Maryland Fried Chicken. [ECF #43, p. 2]. Plaintiff alleges that he has encountered architectural barriers at the Defendants' locations which have impaired his ability to safely enter the premises,

2

navigate the premises, park in accessible parking spaces, enter certain tenant spaces, and use certain restrooms and amenities without assistance. [ECF #43, pp. 2-6]. According to the supplemental complaint, the last time he visited the Defendants' premises was on December 21, 2015. [ECF #43, p. 2]. Plaintiff alleged that he "definitely" intends to return to Myrtle Beach, and consequently the Defendants' premises in the near future on his regular visits to the area. [ECF #43, p. 2]. Aside from his status as a bona fide purchaser, Plaintiff also goes to public accommodations for the purpose of confirming these public areas are compliant with the ADA. [ECF #43, p. 2].

Plaintiff's lawsuit alleges that he has a realistic, credible, existing and continuing threat of discrimination from the Defendants' noncompliance with the ADA. [ECF #43, p. 3]. Plaintiff provides specific examples, though not an exclusive list, in the supplemental complaint of the violations he claims he encountered during his visit to the subject location. [ECF #43, pp. 4-6]. Plaintiff seeks a permanent injunction requiring Defendants to remedy any ADA violations found on the premises, in addition to attorney's fees, costs, and expenses and a declaratory judgment that Defendants have violated the ADA. [ECF #8, p. 6].

In response, Defendants both filed a motion to dismiss pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, alleging Plaintiff lacks standing to bring this lawsuit as required by Article III of the United States Constitution, in part because of Plaintiff's status as a tester. [ECF #45; ECF #46]. Defendants define as a "tester" as a qualified individual with a disability who travels to public places to determine compliance with the ADA. [ECF #45-1, p. 2]. Defendants argue that Plaintiff lacks standing to sue under the ADA because Plaintiff cannot

3

demonstrate that he will suffer an injury in fact of the alleged violations of the ADA while on their premises. [ECF #45-1, p. 5].

## **Standard of Review**

Defendants file their motions pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for "lack of subject-matter jurisdiction." The plaintiff has the burden of proving federal jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper only if the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1280-81 (3d Cir. 1993) (*quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). "The threshold to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir. 1989).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the sufficiency of the facts alleged in a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The United States Supreme Court recently stated that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim

4

> has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In considering a motion to dismiss, the factual allegations in a complaint are accepted as true, and the plaintiff is afforded the benefit of all reasonable inferences to be drawn from the allegations contained within the complaint. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Moreover, materials outside the pleadings which relate to jurisdiction can be considered on a motion to dismiss for lack of jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 (1947).

The doctrine of standing focuses on whether the plaintiff initiating the action is the proper party to bring suit. The constitutional minimum of standing requires three elements: (1) the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent" and not "conjectural or hypothetical;" (2) there must be a causal connection between the injury and the conduct complained of–the injury has to be "fairly...traceable to the challenged action of the defendant, and not..the result of the independent action of some third party not before the court; (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). The party invoking federal jurisdiction bears the burden of proving these elements exist as they are an

5

indispensable part of the party's case. *Id.* at 561. Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of litigation." *Id.* at 561.  Additionally, a plaintiff seeking injunctive relief may not rely upon past injury to satisfy the injury in fact requirement, but must instead show a likelihood of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

## Discussion

For a case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Planned Parenthood of S.C. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004)).  Plaintiff and Defendants disagree on the application of a four-factors test first adopted in an unpublished opinion rendered in *Judy v. Pingue*, No. 08-cv-859, 2009 WL 4261389 (S.D. Ohio Nov. 25, 2009) used to determine whether a plaintiff has standing.  In that case, the district court analyzed whether a plaintiff suffered a "concrete and particularized injury" by considering "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Id.* at *2. The Ohio district court also considered the number of lawsuits previously filed by the plaintiffs in that case.

Plaintiff argues that this test has not been expressly endorsed by any of the courts of

appeals. [ECF #51, pp. 10-12]. In an unpublished opinion, the Fourth Circuit Court of Appeals declined to endorse this test in *Daniels v. Arcade, L.P.*, 477 Fed. Appx. 125, 129 (4th Cir. 2012).[2] Plaintiff also relies heavily upon a case decided by the Maryland District Court, *National Alliance for Accessibility, Inc. and Denise Payne v. CMG Bethesda Owner, LLC*, No. JFM-12-1864, 2012 WL 6108244 (D. Md. Dec. 7, 2012), wherein that court also declined to adopt the four-factors test. In *Bethesda*, the District Court of Maryland considered whether a Florida resident had standing to sue a hotel located in Washington D.C., noting that a myriad of context-dependent factors bear upon the likelihood that an individual would return to a specific location within a city. *Id.* at *3. The plaintiff alleged she had plans to return to the area in October of the following year. *Id.* at *3. The *Bethesda* court indicated that her one-time visit prior to filing suit casts doubt upon her sincerity to return to the hotel, but determined that she alleged a plausible basis for concluding she will visit again in the future. *Id.* at *4 (though ultimately finding no standing to sue). Similarly, Plaintiff argues that he has alleged sufficient facts within his supplemental complaint to conclude he will visit again in the future, and consequently be at risk for suffering a concrete and particularized injury.

Defendants argue that Plaintiff does not have standing to sue under the ADA because Plaintiff has not suffered an injury in fact based on the alleged ADA violations outlined in his supplemental complaint. Defendants do not otherwise address whether Plaintiff meets the other

---

[2] Unpublished cases are not precedential in this circuit. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006). *Daniels* was also distinguishable because the plaintiff at issue in *Daniels* lived approximately twenty miles from the locale in question and was not a frequent filer of these types of lawsuits. However, other district court cases in this circuit have found these factors helpful in analyzing standing in the context of plaintiff's intention to return to the subject property.

7

elements set forth in the *Lujan* analysis. Instead, Defendants point out that a plaintiff seeking injunctive relief must demonstrate a "real and immediate threat" of future injury. Specifically, Defendants argue that in order to demonstrate a "real and immediate threat" of future harm, the contemplated harm must be more than a nebulous threat of harm "some day" in the future. *Lujan*, 504 U.S. at 564.

In analyzing whether someone might suffer future harm, Defendants argue that a plaintiff must demonstrate the intention to return to the property in question to establish future harm under the ADA. *Harty v. Biggs Park, Inc.*, No. 7:11-CV-22-F, 2014 WL 4243823, at *2 (E.D.N.C. Aug. 24, 2014). When considering the "injury in fact" element of standing, district courts in the Fourth Circuit have considered four factors to determine whether a plaintiff is likely to return to a specified location: (1) plaintiff's proximity to defendant's place of public accommodation; (2) plaintiff's past patronage of defendant's place of accommodation; (3) the definitiveness of plaintiff's plan to return; and (4) plaintiff's frequency of travel near the defendant. *Id. See generally Payne v. Chapel Hill North Properties, LLC*, 947 F. Supp. 2d 567 (M.D.N.C. May 23, 2013); *Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp. 2d 998 (W.D.N.C. Apr. 14, 2011); *Payne v. Sears, Roebuck & Co.*, No. 5:11-CV-614-D, 2012 WL 1965389, at *4-7 (E.D.N.C. 2011). Thus, this Court will consider the four-factors test to guide its discussion regarding Plaintiff's standing to sue under the ADA given the facts of this case.

A. Plaintiff's Proximity to Defendants' Location

Defendants argue that the great distance between Plaintiff's home in Atlanta and the Defendants' premises is a factor weighing heavily against a finding of an intention to return to

8

this location, and likewise suffer future harm. As support for this contention, Defendants cite to several cases that observe a general rule that a distance of more than 100 miles between a defendant's business and the plaintiff's residence weighs against a finding of future harm. *See, e.g., Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp. 2d 998, 1002 (W.D.N.C. 2011); *Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005). Plaintiff lives approximately three hundred fifty miles from the Maryland Fried Chicken, a significant distance compared to similar cases where courts have determined this factor weighs heavily against a plaintiff. Thus, this Court finds that the distance alone could be indicative of a lower likelihood that Plaintiff will return to the premises, and consequently, suffer future harm. This factor weighs against Plaintiff.

### B. Plaintiff's Past Patronage of the Gator Coastal and Conway Foods

Defendants argue that Plaintiff's "minimal" past patronage of the premises further evidences an unlikely chance of suffering future harm. [ECF #45-1, p. 8]. This factor is related to proximity in that it is unlikely a plaintiff who lives a great distance from a stated location will have the means to patronize these stores on a consistent basis. Indeed, other courts have found that minimal past patronage weighs heavily against a finding of the likelihood of returning to that location. *Norkunas*, 777 F. Supp. 2d at 1002 (finding that past patronage of a single occasion and a vague desire to return "some day" did not evidence an actual intention on the part of the plaintiff to return); *see also National Alliance for Accessibility v. Macy's Retail Holdings, Inc.*, No. 1:11-CV-877, 2012 WL 5381490, at *5 (M.D.N.C. Oct. 30, 2012) (explaining that a pre-suit second visit to avoid the "single-visit" rule does not necessarily make a post-filing return likely

9

and found that plaintiff did not necessarily prefer this particular store or intend to return). Similarly, Defendants argue that Plaintiff only identified three visits to the subject premises, along with Plaintiff's allegation that he "frequently" shops at the Defendants' premises.

Defendants also indicate that the analysis regarding past patronage seeks to determine whether Plaintiff indeed shows a preference for the location in question. Defendants point out that Plaintiff has not pled any facts in his supplemental complaint suggesting he prefers to shop at that shopping premises over other stores or other locations of those stores found in Defendants' shopping center. [ECF #45-1, p. 13]. Accordingly, Defendants urge this Court to find that this factor weighs against a finding in favor of Plaintiff having the requisite standing to bring this lawsuit.

This Court agrees with Defendants that the distance from Plaintiff's home to the subject premises might otherwise suggest Plaintiff does not intend to return, thereby reducing the likelihood that he prefers this location over another similarly situated shopping center. However, Plaintiff alleges in his supplemental complaint that he "definitely" intends to return to Defendants' premises to shop when he returns to Myrtle Beach, and has visited this location two times on subsequent trips since the initial filing of the complaint. [ECF #43, p. 2]. Thus, Plaintiff has alleged some facts to suggest he has patronized Defendants' premises, and will continue to patronize Defendants' premises in the future. At this stage in the litigation, Plaintiff's allegations are sufficient to show he has patronized the Maryland Fried Chicken and Gator Coastal in the past, though perhaps on a somewhat sporadic basis, and he intends to return in the future. Accordingly, though this Court notes that though the past patronage isn't frequent in number on

10

a monthly basis, Plaintiff has pled sufficient facts to show he is a past patron of Defendants, travels to the area on a consistent basis, and he intends to visit this location in the future based on his preference for Defendants' location. This factor weighs in Plaintiff's favor.

### C. The Definitiveness of Plaintiff's Plan to Return to the Premises

Defendants next attack the likelihood that Plaintiff has definite plans to return to their location, and again urge this Court to find this favor weighing against Plaintiff. Other courts have found that a plaintiff's vague or general statements that he or she intends to return at some point in the future is insufficient to evidence a desire to return to the subject shopping area. *See Harty v. Burlington Coat Factory of SC, LLC*, No. 311-1138-MBS, at *4 (determining that a plaintiff's residence hundreds of miles from the subject property, coupled with the plaintiff's allegation that he visits South Carolina "often on business" and plans to continue to visit does not state that the plaintiff frequently visits Columbia or otherwise establish an inference he will return to the subject property in the future). Likewise, Defendants argue that Plaintiff fails to make reference to any particular date or event for which he intends to return to Myrtle Beach. Defendant further argues Plaintiff has failed to identify what he plans to purchase or any "special interest" he has in Defendants' location.

Plaintiff has alleged that he has visited this area on a quarterly basis for ten to fifteen years. On these visits, he has shopped at these stores "numerous times" and intends on shopping at these stores again upon his quarterly returns to Myrtle Beach. [ECF #43, p. 2]. While this Court agrees that other courts have found a failure to demonstrate an intent to return on general and conclusory allegations regarding travel to the subject property, under the facts of this case,

11

this Court finds Plaintiff's allegations sufficient to evidence an intent to return, based in part upon his historical travel to the area on a consistent basis. Indeed, Plaintiff has alleged definite plans to return to Defendants' premises.

Further, for the purposes of this motion to dismiss, this Court does not find Defendants' contention that Plaintiff's only well-pled reason for returning to the shopping center is due to his status as a "tester" to be determinative at this stage in the litigation. [ECF #45-1, p. 12]. As Plaintiff points out, at least two circuit court of appeals have upheld tester standing, finding that the number of lawsuits filed by an individual does not undermine the plausibility of an individual's intent to return to a subject property. *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-34 (11th Cir. 2013). Where as here, a plaintiff has established that he has a history of visiting a known tourist destination and intends to continue visiting that same tourist destination, the fact that he may also qualify as a "tester" does not necessarily preclude his ability to bring this lawsuit. *See generally Nat'l Alliance for Accessibility, Inc. v. CMG Bethesda Owner LLC,* No. JFM-12-1864, 2012 WL 6108244, at *4 (D. Md. Dec. 7, 2012). Further, it does not appear from the record that plaintiff's previously-filed lawsuits have been deemed frivolous by the courts in which they were filed. Accordingly, this factor weighs in Plaintiff's favor.

D. Plaintiff's Frequency of Travel Near Defendants' Location

Defendants argue that Plaintiff's assertions that "he has been coming to Myrtle Beach and the surrounding areas for approximately ten to fifteen years, approximately once every quarter with his friends and family" are intentionally vague and insufficient to establish standing. Defendants

compare the present case to *Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp.2d 998, 1002 (W.D.N.C. 2011), where the court observed that plaintiff failed to identify any reason to drive to that defendant's location in Charlotte, even though that plaintiff alleged he traveled through the Charlotte metropolitan area three to four times per year.

This Court does not agree with Defendants that Plaintiff has failed to plead sufficient facts evidencing his frequency of travel near Defendants' premises.  Unlike the plaintiff in *Norkunas*, not only does Plaintiff allege that he travels to the area once a quarter, as has been his practice for over a decade, but he returned to the property in 2015 and alleged that he "definitely plans to return to the shopping center and Maryland Fried Chicken." [ECF #43, p. 2].  Indeed, unlike other cases where Plaintiff generally alleges an intent to return, Plaintiff has alleged a pattern of returning to this area on a consistent, quarterly basis and indeed visited at least three times in 2015.  Accordingly, this Court finds this factor weighs in Plaintiff's favor to confer standing. After considering the factors discussed above, the majority of the factors weigh in Plaintiff's favor.

Finally, Plaintiff argues that courts that have not adopted the four-factors discussed above generally cite to three considerations regarding the intent to return to a subject location for the purposes of standing: (1) the plaintiff alleges past injury under the ADA; (2) it is reasonable to infer from the complaint that the discriminatory treatment will continue; and (3) it is reasonable to infer from the complaint that based on plaintiff's past frequency of visits and proximity to plaintiff's home, plaintiff intends to return to the subject location in the future. This Court observes that the second and third consideration are weighing some of the same factual information that the four-factors test seeks to address.

13

The Court finds that Plaintiff has standing to bring this lawsuit. Plaintiff alleged past injury under the ADA, Plaintiff alleged that the barriers prevent him for safely accessing the Shopping Center, and Plaintiff alleged a frequency of past visits and an intention to return on at least one date certain in the future in December 2015, at the time he filed his amended complaint.[3] [ECF #15]. Accordingly, for these reasons and for the considerations given in the four-factors analysis discussed above, this Court finds that Plaintiff has pled sufficient facts to confer standing, as required by Article III of the United States Constitution.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendants' motions to dismiss [ECF #45; ECF #46], Plaintiff's response to the motion [ECF #51], Defendant Conway Food's reply [ECF #52], and the applicable law. For the reasons stated above, Defendants' motions to dismiss [ECF #45; ECF #46] are **DENIED.** The Clerk is directed to lift the stay of the scheduling order.

**IT IS SO ORDERED.**

Florence, South Carolina                                      s/ R. Bryan Harwell
July 29, 2016                                                         R. Bryan Harwell
                                                                              United States District Judge

---

[3] Plaintiff's amended complaint was filed in October 2015; thus, Plaintiff's intention to return in December 2015 was, at the time of the pleading, a date certain in the future.